UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RANDY LOUIS DONALDSON,<br>Petitioner,<br>v.<br>ROBERT JACKSON,<br>Respondent. | CASE NO. 3:25-cv-05354-JHC<br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Randy Louis Donaldson's Objections to the Report and Recommendation of Magistrate Judge David W. Christel. Dkt. # 22. Petitioner filed a petition for a writ of habeas corpus with this Court on April 23, 2025, under 28 U.S.C. § 2254. Dkt. # 1. The petition raises four grounds for relief, brings six constitutional claims, asserts that the state court's decision was premised on an unreasonable finding of fact, and requests an evidentiary hearing. *Id.* ¶¶ 7.1–9.3. The Honorable Judge David W. Christel, United States Magistrate Judge, issued a Report and Recommendation (Report) on December 29, 2025, recommending that the Court deny the petition with prejudice and deny an evidentiary hearing and a certificate of appealability. Dkt. # 19.

Petitioner requests that this Court "reject all of the Magistrate's recommendations" and raises objections as to his constitutional claims and his unreasonable factual finding claim. Dkt. # 22 at 47. The Court has considered the Report, Petitioner's objections thereto, the rest of the record, and the applicable law. Being fully advised, the Court hereby:

(1) ADOPTS the conclusions and reasoning of the Report with modifications outlined below;

(2) DENIES Petitioner's habeas claims with prejudice;

(3) DENIES an evidentiary hearing as to all of Petitioner's claims; and

(4) DENIES a certificate of appealability as to Petitioner's habeas claims.

## II

## Background

The background section of the Magistrate Judge's Report at Part I incorporates the detailed factual and procedural overview provided in the October 24, 2023, opinion of the Washington Court of Appeals denying Donaldson's appeal and personal restraint petition. Dkt. # 19 at 2–10. As discussed in this Order, the Washington Court of Appeals misstated the record in finding that witness Olivia Brown "described two shooters to the officer" at the hospital in the hours following the shooting. *See id.* at 2 (citing Dkt. # 10-3 at 153). The Court clarifies that Brown described two "subjects," rather than "shooters." *See* Dkt. # 10-5 at 52–53. The Court otherwise ADOPTS Part I of the Report.

## III

## Standard of Review

When reviewing objections to a magistrate judge's report, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. Proc. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). While district courts are not obligated to provide an individualized analysis of each objection, summarily adopting a magistrate judge's report, without addressing the parties' objections, is disfavored. *See United States v. Ramos*, 65 F.4th 427, 443 (9th Cir. 2023) (Collins, J., concurring in part, dissenting in part); *see also United States v. Jones*, 837 F. App'x 423, 424 (9th Cir. 2021).

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) governs a federal court's review of a § 2254 petition for a writ of habeas corpus. *See Williams v. Taylor*, 529 U.S. 362, 399 (2000). Under the AEDPA,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, *clearly established Federal law*, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on *an unreasonable determination of the facts* in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphases added).

Under Section 2254(d)(1), a decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405–06. A decision is an "unreasonable application" of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Id.* at 407–08. The term "clearly established Federal law" refers to the governing legal principles set forth by the Supreme Court at the time of the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 64 (2003). Notably, "[i]f no Supreme Court

precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485–86 (9th Cir. 2000)). Under Section 2254(d)(2), a decision is an "unreasonable determination of the facts" if the evidence before the state court was "too powerful to conclude anything but" the opposite result of that reached by the state court. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

The AEDPA imposes a highly deferential standard of review, with the petitioner bearing the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering claims under Section 2254(d), the court is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 182; *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013).

## IV

## DISCUSSION

For the reasons discussed below, the Court adopts Parts II.B., II.D., II.E., and II.F. of the Report and Recommendation with modifications and adopts Parts II.C., III., and IV. of the Report without modifications.[1]

[1] Petitioner does not raise any specific objections to the Magistrate Judge's analysis of his ineffective assistance of appellate counsel claim (Constitutional Ground 2), the availability of a certificate of appealability, or the issue of whether to grant an evidentiary hearing. *See generally* Dkt. # 22. Thus, the Court adopts the Magistrate Judge's recommendations on these issues, as set forth in Parts II.C., III., and IV., of the Report, and does not address them herein.

A. Unreasonable Findings of Fact

Petitioner objects to the Report insofar as it does not address his claim that the state appellate court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Dkt. # 22 at 38–39 (citing 28 U.S.C. § 2254(d)(2)). Petitioner's Section 2254(d)(2) claim asserts that "[t]he state court made an unreasonable finding of fact when it found that on the night of the shooting witness Brown told a police officer that there had been only two shooters." Dkt. # 1 ¶ 9.1. He continues that this unreasonable finding "tainted" the state appellate court's "determination that there was no substantial likelihood of misidentification and thus tainted" its determination that there was no due process violation. *Id.* ¶ 9.2.

Petitioner is correct that the Report does not address this claim in recommending denial of the petition. *See generally* Dkt. # 19; Fed. R. Civ. P. 72(b)(1) (the magistrate judge "must" enter a recommended disposition when reviewing "a pretrial matter dispositive of a claim"). Because Petitioner timely objected to this omission, the Court reviews Petitioner's Section 2254(d)(2) claim de novo and modifies the Report accordingly. 28 U.S.C. § 636(b)(1); *see also Jones*, 837 F. App'x at 424 (district court erred in adopting report and recommendation without addressing objection that magistrate judge "failed to address" specific argument).

A federal court adjudicating a habeas claim may not second-guess a state court's fact-finding process pursuant to 8 U.S.C. § 2254(d)(2) unless, "after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds as stated in Murray v. Schriro*, 745 F.3d 984, 999–1001 (9th Cir. 2014). In the Ninth Circuit, "where [1] the state courts plainly misapprehend or misstate the record in making their findings, and [2] the misapprehension goes to a material factual issue that is central to petitioner's claim, that

misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Marks v. Davis*, 106 F.4th 941, 984–85 (9th Cir. 2024) (quoting *Taylor*, 366 F.3d at 1001). Such misapprehension can undermine the fact-finding process when the state court "has before it, yet apparently ignores, evidence that supports [a] petitioner's claim." *Taylor*, 366 F.3d at 1001 (citing *Miller–El,* 537 U.S. at 346). As pertinent to this inquiry, a material fact is one that is "significant or essential to the issue or matter at hand; esp., a fact that makes a difference in the result to be reached in a given case." *Marks*, 106 F.4th at 949 n.1 (quoting *Fact*, Black's Law Dictionary (11th ed. 2019)).

Here, the opinion of the Washington Court of Appeals affirming Donaldson's convictions and denying his personal restraint petition provides, "The record shows that Brown identified two shooters to police at the hospital shortly after the shooting and months before she underwent EMDR therapy." Dkt. # 10-3 at 173 (citing Dkt. # 10-5 at 46–47). The court reiterated that Brown "described two shooters to police the night of the shooting." *Id.* at 174.[2] Petitioner argues that this finding is unreasonable because it is undermined by specific evidence not considered by the state appellate court. Most critically, in support of this finding, the state appellate court cited the testimony of Officer Connor Cockle, one of the police officers who took a statement from Brown on the night of the shooting. While Officer Cockle did initially testify that Brown described two "shooters" on the night of the shooting, he retracted this testimony on cross-examination and clarified that Brown described "two subjects," but only "one person

[2] Elsewhere, the state appellate court found that "[s]hortly after arriving at the hospital around 2:20 a.m., Brown spoke to a patrol officer. This time, Brown described two shooters to the officer. The first was a 'possibly Hispanic male' who was right next to Foster. . . . second, 'who ran up behind later and was shooting,' was 'a light complexion, high yellow, [B]lack male [who was] five-foot nine to six-foot in height; approximately 170 pounds; late 20s in age; [with] shoulder-length dreadlocks pulled back into a ponytail; gold grille in his mouth; and wearing a black hoodie.'" Dkt. # 10-3 at 153 (citing Dkt. # 10-5 at 46–47).

shooting." Dkt. # 10-5 at 52–53. The state appellate court did not address or acknowledge this retraction.

Separately, during the trial, the State of Washington stipulated that, during her interview with two other detectives at the hospital, Brown "described seeing one shooter with one gun." *Id.* at 337. Immediately after the trial court read this stipulation into the record and instructed the jury to consider it as evidence, defense counsel inquired of Brown: "So, ma'am, if we are going to accept that stipulation of the prosecutor's office, why didn't you tell these two detectives that you saw a second gun and a second shooter?" *Id.* Brown responded: "I told them when I remembered." *Id.* at 338. On redirect, Brown was asked when she "start[ed] to remember a second person shooting." *Id.* at 382. She responded: "It was a little while after I was talking to the detectives again," and later clarified that Eye Movement Desensitization and Reprocessing (EMDR) therapy, which she commenced "[p]robably like maybe a month after" the incident, helped her "remember more." *Id.* at 382–83. The state appellate court did not address or acknowledge the State's stipulation, nor Brown's testimony regarding the timeline concerning her identification of two shooters.

Petitioner also identifies the following finding by the appellate court as erroneous: "[Brown] gave police consistent and accurate descriptions of Donaldson three times within a few hours of the shooting, *before* she saw the Facebook video. She consistently described the shooter [as] a light-skinned Black man with dreadlocks pulled into a ponytail, wearing a grille in his mouth and a black hoodie." Dkt. # 2 at 94 (quoting Dkt. # 10-3 at 169). Petitioner contends that Brown did not offer police any descriptions "of Donaldson" but instead inconsistently described an individual whom the state appellate court uniformly linked to Donaldson. *Id.* Petitioner also disputes the state appellate court's finding that Brown's descriptions were "consistent with those other witnesses gave." *Id.* at 95 (quoting Dkt. # 10-3 at 169).

The state appellate court's factual findings that Brown identified two "shooters" on the night of the shooting reflect a plain misapprehension or misstatement of the record and therefore meet the first prong of the *Taylor* formulation. *Marks*, 106 F.4th at 984. In support of these findings, the state appellate court cited the testimony of Officer Cockle but did not acknowledge his retraction of that testimony. Dkt. # 10-3 at 173 (citing Dkt. # 10-5 at 46–47); *see also* Dkt. # 10-5 at 52–53. The state appellate court also did not consider Brown's own contradictory testimony and the State's stipulation that she only identified one shooter on the night of the incident. *See* Dkt. ## 10-3 at 173; 10-5 at 337–38, 382–83. Although this evidence was available to the state appellate court, it was "apparently ignore[d]," undermining the fact-finding process. *Taylor*, 366 F.3d at 1001.

But Petitioner does not show that the state court's misapprehension of the record on this issue goes to a "material factual issue that is central to petitioner's claim." *Id.* The narrow question of whether Brown contemporaneously identified two shooters is not "significant or essential" to the broader factual issue of whether there were one or two shooters, given the substantial evidence in the record supporting the involvement of two shooters. *Marks*, 106 F.4th at 949 n.1. First, as the state appellate court observed, "[s]urveillance videos of the shooting admitted at trial showed at least seven muzzle flashes associated with two different people." Dkt. # 10-3 at 159; *see also* Dkt. # 10-8 at 128 (testimony of forensic video analyst explaining that only a few of the seven visible flashes of light were associated with one suspect's extended right arm). Additionally, two different types of firearm casings, associated with two different firearms, were found at the scene. Dkt. # 10-3 at 159; *see also* Dkt. # 10-7 at 321 (testimony from forensic scientist that .40-caliber cartridge casings fired during shooting "would have been fired in a different gun" than the 9-millimeter cartridge casings fired during shooting). Another witness testified on cross-examination that she heard two different types of gunfire going off to

her left and to her right. Dkt. # 10-7 at 56. Given the foregoing evidence, the number of shooters Brown contemporaneously identified is not a fact that "ma[de] a difference in the result" of Donaldson's trial. *Marks*, 106 F.4th at 949 n.1. Accordingly, the Court cannot conclude that Brown's contemporaneous identification of two shooters, rather than one, is a "material factual issue that is central to petitioner's claim." *Taylor*, 366 F.3d at 1001.

As to the other factual findings identified by Petitioner as erroneous, the Court does not find these to be "objectively unreasonable." *Taylor*, 366 F.3d at 999 (citations omitted). First, Petitioner contends that the statement that Brown's descriptions of the shooter were "consistent" is incorrect because she described the shooter to Officer Cockle as a "black male," but did not make this assertion to Officer Brahs or Detective Muse. Dkt. # 2 at 94. The underlying record shows that Brown described the shooter to Officer Brahs as a "a light-skinned male with dreadlocks." Dkt. # 10-5 at 410. Additionally, elsewhere in his supporting brief, Petitioner cites an exhibit indicating that Brown "described the shooter as a black man with dreads" to Detective Muse at the hospital; Petitioner himself describes this statement as "consistent with the description she had given to Officer Cockle." Dkt. # 2 at 39 (citing Exhibit #184 at 11:30-40; Dkt. # 10-5 at 46–47).

Similarly, Petitioner protests that, contrary to the finding made by the state appellate court, Brown's descriptions were not "consistent with those other witnesses gave." *Id.* at 95. For example, minutes after the shooting, one witness told a 911 operator that the shooters were "Hispanic" or "Latino"; another described the shooter as having "two French braids." *Id.* (citing Dkt. # 10-5 at 471, 495, 499; 10-6 at 9). But the record also indicates the latter of these witnesses, like Brown, described the shooter as a "light-skinned" African-American man wearing a black hoodie. Dkt. # 10-5 at 183; *see also id.* at 341 (testimony reflecting Brown's statement to law enforcement on the night of the incident that the shooter "had a black . . . hoodie

on," which he had not been wearing inside the club). Similarly, Petitioner argues that Brown provided varying statements regarding whether and when Donaldson was wearing a gold grille. Dkt. # 2 at 99–100. But even if "reasonable minds reviewing the record might disagree" about whether these discrepancies render Brown's statements inconsistent, this "does not suffice to supersede" the trial court's determination on habeas review. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (citations omitted).

Accordingly, the Court DENIES Petitioner's claim for habeas relief under 28 U.S.C. § 2254(d)(2).

B. Constitutional Ground 1: Suggestive Photo Montage

Petitioner asserted in state court that the pretrial identification procedure employed in his case violated his due process rights under *Manson v. Brathwaite,* 432 U.S. 98 (1977) and *Neil v. Biggers,* 409 U.S. 188 (1972). Dkt. # 2 at 69. In *Biggers*, the Supreme Court identified several factors to be considered in evaluating the reliability of witness identifications: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200. In *Brathwaite*, the Supreme Court clarified that these indicia of reliability must be weighed against the "corrupting effect of the suggestive identification itself" as part of a broader "totality of the circumstances" analysis. *Brathwaite*, 432 U.S. at 113–14.

The state appellate court agreed that the photo montage used with witness Brown was impermissibly suggestive, but held that Brown's identifications "were nevertheless reliable under the totality of the circumstances." Dkt. # 10-3 at 165. Donaldson claims that the state appellate court's analysis is inconsistent with *Biggers*, *Brathwaite*, and *Foster v. California*, 394 U.S. 440

(1969). Dkt. ## 1 ¶¶ 6.1, 7.1; 2 at 65–93. Petitioner raises separate objections to the Magistrate Judge's application of each of those cases in the Report. The Court addresses each objection in turn.

1. *Manson v. Brathwaite*

Petitioner argues that the state appellate court misapplied *Brathwaite* by considering evidence of identifications made by other witnesses while assessing the reliability of Brown's identification. In the Report, the Magistrate Judge acknowledged that the state appellate court "did state that 'Brown's descriptions were consistent with those other witnesses gave,'" but "still considered the totality of the circumstances when assessing the reliability of her identification of Petitioner as the shooter." Dkt. # 19 at 16. Petitioner construes this portion of the Report and Recommendation as "conced[ing] that [*Brathwaite*] prohibits the consideration of corroborative evidence and recogniz[ing] that the state appellate court violated this clearly established rule." Dkt. # 22 at 7. He objects to the Magistrate Judge's conclusion that, because the state appellate court "still considered the totality of the circumstances," its analysis was ultimately consistent with precedent. *Id.* at 12–13. Petitioner suggests that this is tantamount to a harmless error analysis, and contends that harmless error was waived by Respondent and should not have been considered by the Magistrate Judge. *Id.* at 13–14.

This Court need not reach this issue, however, because the state appellate court's reliability analysis does not run afoul of any clear rule in *Brathwaite*. Contrary to Petitioner's assertion, it is not clear at all that *Brathwaite* outright bars the consideration of corroborative evidence. In fact, the *Brathwaite* Court noted that its assessment of reliability in that case was "hardly undermined" by corroborative evidence. *Brathwaite*, 432 U.S. at 116. Petitioner appears to contend that the Supreme Court's clarification that the consideration of corroborative

evidence "play[ed] no part" in its reliability analysis established a bright-line rule barring the consideration of such evidence. Dkt. # 22 at 9 (citing *Brathwaite*, 432 U.S. at 116). But Section 2254(d)(1)'s "clearly established" language "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. The holding of *Brathwaite* establishes the totality of the circumstances framework for determining the admissibility of identifications; it does not center on the prohibition of corroborative evidence. For the same reason, Petitioner's reliance on Justice Stevens's concurrence also fails. Dkt. # 22 at 9–10.

Petitioner also relies on a Ninth Circuit decision interpreting *Brathwaite* as prohibiting the consideration of corroborative evidence of the identity of the perpetrator of a crime. Dkt. # 22 at 10 (citing *Green* v. *Loggins,* 614 F.2d 219 (9th Cir. 1980)). But the Supreme Court has expressly warned courts reviewing 28 U.S.C. § 2254(d)(1) claims that Circuit precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced," even where it purports to "faithfully appl[y] the principles enunciated by the Supreme Court." *Lopez v. Smith*, 574 U.S. 1, 7 (2014) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)). As such, neither *Green*, nor the other Circuit cases cited by Petitioner,[3] can give rise to the establishment of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[3] In fact, there appears to be a Circuit split on whether corroborative evidence may be considered in the prima facie reliability analysis or as part of the harmless error analysis under *Brathwaite*. *See, e.g.*, *Raheem v. Kelly*, 257 F.3d 122, 140–41 (2d Cir. 2001) (limiting consideration of corroborative evidence to harmless error analysis); *United States v. Emanuele,* 51 F.3d 1123, 1128 (3d Cir.1995) (same); *United States v. Rogers,* 126 F.3d 655, 659 (5th Cir. 1997) (same); *United States v. Wilkerson,* 84 F.3d 692, 695 (4th Cir.1996), *cert. denied*, 522 U.S. 934 (1997) (considering corroborative evidence of guilt as part of reliability analysis); *United States v. Napoli*, 814 F.2d 1151, 1156–57, 1161 (7th Cir.1987) (same). The existence of a circuit split further shows that Petitioner's interpretation of *Brathwaite* does not reflect "clearly established Federal law." *Ponce v. Felker*, 606 F.3d 596, 605 (9th Cir. 2010) (collecting cases).

2. *Neil v. Biggers*

Petitioner argues that the state appellate court's assessment of the reliability of Brown's identification is an unreasonable application of clearly established federal law; he says the court overlooked two of the five *Biggers* factors: Brown's opportunity to view Petitioner "at the time of the crime," and her level of certainty. Dkt. # 1 ¶ 7.1(b), (d). In the Report, the Magistrate Judge rejected this argument, finding that the *Biggers* Court "never held that a reviewing court must analyze all the factors it set forth in that case." Dkt. # 19 at 16–17. Petitioner says that this interpretation of *Biggers* is incorrect. He cites *Green*, and the decisions of other Courts of Appeal applying *Biggers*, in support of his interpretation that all five factors must be applied. Dkt. # 22 at 19–20 (citing *Green*, 614 F.2d at 224 and collecting cases). Again, these Circuit-level opinions cannot serve as the basis for "clearly established Federal law" under 28 U.S.C. § 2254(d)(1). *See Lopez*, 574 U.S. at 7.

Still, the Court agrees with Petitioner that *Biggers* itself, and its Supreme Court progeny, establish a clear requirement that courts undertaking reliability analyses apply all five factors. The *Biggers* Court identified the "factors to be considered in evaluating the likelihood of misidentification" and proceeded to apply and weigh all five factors. *Biggers*, 409 U.S. at 199–201. Later, in *Brathwaite*, the Supreme Court reiterated that the "factors to be considered" in assessing reliability were "set out in *Biggers*," and again applied all five factors. *Brathwaite*, 432 U.S. at 114–16. Other Supreme Court cases applying *Biggers* have also applied all five of the factors. *See United States v. Crews*, 445 U.S. 463, 473 n.18 (1980); *Sexton v. Beaudreaux*, 585 U.S. 961, 967 (2018). The Court therefore concludes that, as a matter of clearly established federal law as determined by the Supreme Court, courts must apply all five *Biggers* factors when conducting reliability analyses, and the state appellate should have done so.

But even if the admission of the photo montage did violate Petitioner's due process rights, the error was harmless. A constitutional error does not require habeas relief unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). In the context of due process violations arising out of impermissibly suggestive identification procedures, the error may be harmless if cross-examination "brought out the weakness of [the] identification, the suggestiveness of the circumstances under which it was made," the short amount of time the witness had to view the suspect, the witness's failure to pick the suspect out of a photo array, and other factors undermining the identification. *Williams v. Stewart*, 441 F.3d 1030, 1039 (9th Cir. 2006), *amended*, No. 01-99015, 2006 WL 997605 (9th Cir. Apr. 18, 2006). Additionally, "strong circumstantial evidence" connecting the defendant to the scene may bolster the harmlessness of the error. *Id.*

Here, almost all these factors apply. As to the weakness of the identification, testimony from law enforcement revealed that, after looking through the photo montage, Brown commented that "[t]he guy in the red looked like [the shooter]," but that "he had lighter skin." Dkt. # 10-6 at 493. While she later identified Donaldson by telling a detective that "[t]he guy in the dreads with red is the guy," this identification was made over the phone, retroactively, and without an opportunity to view the photo montage again. *Id.* at 375–78. With respect to the suggestiveness of the circumstances under which the identification was made, the jury heard testimony that Brown had seen Donaldson in a Facebook video prior to participating in the photo montage. *Id.* at 493–94. On cross-examination, a law enforcement officer testified that, after viewing the photos, Brown checked a box stating: "I can't identify the suspect." *Id.* at 446. Additionally, other circumstantial evidence placed Donaldson at the scene as one of the shooters,

including independent witness identifications,[4] photo evidence linking Donaldson to a distinctive weapon similar to the firearm used during the shooting,[5] and surveillance footage showing a shooting suspect wearing clothing similar to that worn by Donaldson on the night of the incident.[6] This evidence undercuts any harm resulting from a constitutional violation associated with Brown's photo montage identification.

3. *Foster v. California*

In *Foster*, the Supreme Court held that eyewitness identifications obtained through police-arranged procedures that "made it all but inevitable that [the witness] would identify [the defendant]" violate the Due Process Clause and must be excluded. *Foster*, 394 U.S. at 443. Petitioner argues that the state appellate court's treatment of the photo montage used with Brown is inconsistent with clearly established federal law as set forth in *Foster*. He objects to the Report and Recommendation insofar as it does not address his claim arising under *Foster*. Even if the admissibility of Brown's identification of Petitioner violated the Due Process Clause under the principles articulated in *Foster*, any error was harmless for the same reasons set forth in the Court's discussion of *Biggers*.

Based on the above, the Court DENIES Petitioner's claim for habeas relief under 28 U.S.C. § 2254(d)(1) as set forth in his first constitutional claim.

---

[4] For example, witness Johnasha Manning testified that the shooter was a "light-skinned," "African-American" man wearing a black hoodie. Dkt. # 10-5 at 183. The jury also heard that other witnesses, including Manning and Wyatt Percell, identified Donaldson as one of the shooters after viewing a Facebook Live video taken from the nightclub. *Id.* at 188–92; Dkt. ## 10-7 at 130–31, 134–36; 10-9 at 262–63, 276–77.

[5] No firearms were recovered from the scene. Dkt. # 10-5 at 57–58; 10-7 at 189. But the jury viewed still images from a music video in which Donaldson was shown handling an instrument visually consistent with a Glock 9mm firearm, consistent with some of the shell casing markings found at the scene. Dkt. # 10-7 at 368, 376.

[6] *See* Dkt. # 10-8 at 164–81 (testimony of forensic video analyst describing consistencies between clothing shown in known images of Donaldson and clothing worn by "Suspect No. 7" as depicted in surveillance camera footage of the shooting).

C. Constitutional Grounds 3–4: EMDR Therapy

Petitioner's third and fourth constitutional claims relate to Brown's testimony about her EMDR therapy and its effects on her memory. In Claim 3 of the petition, Donaldson asserts that his Sixth Amendment Confrontation Clause rights were violated when he was unable to cross-examine Brown about her EMDR therapy and how it may have affected her memory. Dkt. # 1 ¶ 7.3. In Claim 4, Petitioner argues that his Sixth Amendment rights to effective representation[7] and to present a defense were violated because his counsel was denied an opportunity to pursue consultation with an expert regarding EMDR therapy and its potential to generate false memories. *Id.* ¶ 7.4.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." U.S. Const. Amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). This includes the right to cross-examine witnesses to impeach their credibility. *Olden v. Kentucky*, 488 U.S. 227, 231–32 (1988). Trial judges have wide latitude to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v Van Arsdall*, 475 U.S. 673, 679 (1986). But these restrictions "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (citing *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Relying principally on Ninth Circuit precedent, the Magistrate Judge reasoned that Petitioner's Confrontation Clause rights were not violated by the Court's limitations on his

[7] As mentioned above, Petitioner does not appear to object to the Magistrate Judge's analysis of his claim arising under the Sixth Amendment right to effective representation. *See generally* Dkt. # 22.

counsel's ability to cross-examine Brown about EMDR therapy because "defense counsel had the opportunity to show the weaknesses in Brown's testimony and undermine her credibility regarding her receiving EMDR therapy." Dkt. # 19 at 23 (citing *Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011)). In his Objections, Petitioner argues that the Magistrate Judge's reasoning relied on the state court's erroneous factual assertion that Brown had identified two shooters prior to commencing EMDR therapy. Dkt. # 22 at 39.

The Court's review of the record shows that defense counsel was not able to coherently question Brown regarding her EMDR therapy and the timeline of her associated memory reconstruction. Instead, he solicited general questions about the acronym EMDR, the definition of "brain stimulation therapy," and the timeline of Brown's therapy. Dkt. # 10-5 at 390–401. The trial court's denial of a continuance (or even a short recess) to allow Donaldson's counsel to respond to the "surprise" of Brown's testimony about EMDR therapy was disproportionate to the court's need to restrict cross-examination. *Lucas*, 500 U.S. at 151. The Court agrees with Petitioner that these disproportionate restrictions deprived Donaldson's counsel of "an opportunity to effectively cross examine Brown." Dkt. # 2 at 133.

But any Confrontation Clause violation was harmless. Petitioner himself acknowledges that an effective cross-examination of Brown would have allowed his counsel to "show[] that her EMDR sessions might have caused her brain to generate a false memory that *there actually was a second shooter*." *Id.* (emphasis added). The inquiry, therefore, is whether given the record as a whole, the court's denial of cross-examination on the potential for false memory generation on this point had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. For the reasons set forth in the Court's Section 2254(d)(2) materiality analysis above, Brown's memory on the number of shooters involved in the incident did not substantially affect or influence the jury's verdict, given the significant record evidence that two

shooters were involved. The same conclusion carries over to Claim 4 of the Petition, which centers on the trial court's denial of an opportunity to present a defense concerning the risk of false memory generation. Dkt. # 1 ¶ 7.4.

Based on the above, the Court DENIES Petitioner's claim for habeas relief under 28 U.S.C. § 2254(d)(1) as set forth in his third and fourth constitutional claims.

D. Constitutional Grounds 5–6: Pre-Arrest Statements

Petitioner's final constitutional claims relate to comments made by the prosecutor during closing arguments. During his arrest, Donaldson told officers: "You've got your prize. Let's go," and then without prompting added, "Okay. I'm 30. I've done everything I wanted to do." Dkt. # 10-6 at 108. The prosecutor repeated these statements in his closing remarks to the jury and added that Donaldson's response to the arrest was "not something like 'you've got the wrong guy' or 'what's this about' or 'I didn't do this.'" Dkt. # 10-9 at 395. The prosecutor continued: "His response is nothing like you would expect from someone who didn't do it. His response is one of absolute defiance and just indifference, talking about how the officers got their prize." *Id.*

In state court, Petitioner argued that the prosecutor violated his right to remain silent by making these comments. The state appellate court denied this claim, reasoning:

> Prosecutors have wide latitude to comment on the evidence in closing argument. [*State v. Thorgerson*, 172 Wn.2d 438, 448 (2011)]. The prosecutor in this case repeated the admitted statements and emphasized the context of the statements. The prosecutor did not use the statements to draw attention to or otherwise comment on Donaldson's later exercise of his right to silence. Donaldson has not cited any case holding that a prosecutor is prohibited from commenting on statements admitted under CrR 3.5. And the prosecutor never implied that Donaldson should have testified to explain his statements; he only drew attention to defense counsel's failure to justify the statements in closing. We hold that there was no improper comment on silence.

Dkt. # 10-3 at 179–80.

Claim 5 of the Petition provides that "Petitioner's Fifth Amendment right to remain silent was violated by the trial prosecutor's argument to the jury that Petitioner failed to say, 'I didn't do this,' or you've got the wrong guy." Dkt. # 1 ¶ 7.5. Claim 6 provides that Petitioner's Fourteenth Amendment right to due process and his Fifth Amendment right to remain silent were "violated by the prosecutor's closing argument to the jury which expressly invited the jury to infer from the Petitioner's silent failure to tell the arresting officer that they were arresting the wrong guy, or that he didn't do it, or to make any similar statement of the type one would expect an innocent person to make." *Id.* ¶ 7.6. Petitioner cites *Wilson v. United States*, 149 U.S. 60 (1893), *Griffin v. California*, 380 U.S. 609 (1965), *Anderson v. Nelson*, 390 U.S. 523 (1968), and *Doyle v. Ohio*, 426 U.S. 610 (1976), in support of these claims. *Id.* ¶ 6.4.

In *Doyle*, the Supreme Court held that the use of a defendant's silence, "at the time of arrest and after receiving Miranda warnings," violates the Due Process Clause. *Doyle*, 426 U.S. at 619. Four years later, the Supreme Court clarified:

> *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Anderson v. Charles*, 447 U.S. 404, 408 (1980) (collecting cases). The Magistrate Judge found that "the prosecution's closing arguments regarding Petitioner's voluntary statements fit within the framework created" by *Doyle* and *Anderson*. Dkt. # 19 at 30. In his Objections, Petitioner reiterates his position that the prosecutor's comments reflected a *Doyle* violation and disputes the Magistrate Judge's conclusion that *Anderson* applies to this case. Specifically, Petitioner argues that *Anderson* only "covers impeachment by means of eliciting *inconsistent* statements." Dkt. # 22 at 42 (emphasis in original). Raising a similar argument in his Reply in support of the Petition, Petitioner relies on the Ninth Circuit's decision in *United States v. Caruto*, 532 F.3d 822

(9th Cir. 2008). Dkt. # 15 at 40. In *Caruto*, the Ninth Circuit concluded that *Charles* does not "justify cross-examination or argument regarding what was not said at the time of arrest." *Caruto*, 532 F.3d at 831 (collecting cases). The *Caruto* court held that *Doyle* barred the prosecutor's argument, which "emphasiz[ed] omissions" from the defendant's post-arrest statement "that exist only because [the defendant] invoked her right to counsel under *Miranda*." *Id.* at 824. While the prosecutor's argument regarding Donaldson's comments closely align with the circumstances contemplated in *Caruto*, the Ninth Circuit's application of *Doyle* and *Anderson* in that case does not reflect "clearly established Federal law." 28 U.S.C. § 2254(d)(1); *see Lopez*, 574 U.S. at 6–7. The Court cannot otherwise conclude that the prosecutor's comments in this case establish a violation of the legal principles established directly by the Supreme Court in *Doyle* or *Anderson*.

Petitioner's reliance on *Wilson* and *Griffin* fares no better. In *Wilson*, the Supreme Court reversed a criminal conviction wherein the prosecutor made the following remarks to the jury during closing: "I[f] I am ever charged with a crime . . . I will go upon the stand, and hold up my hand before high heaven, and testify to my innocence of the crime." *Wilson*, 149 U.S. at 66. The Supreme Court held in *Griffin* that such commentary on a defendant's failure to testify violates the Fifth Amendment. *Griffin*, 380 U.S. at 612–13. Here, however, the prosecutor made no such remark on Petitioner's failure to testify. He instead commented on the nature of Petitioner's comments during his arrest. The state appellate court's analysis of these statements cannot be said to be contrary to, or an unreasonable application of, *Wilson* or *Griffin*.

Based on the above, the Court DENIES Petitioner's claim for habeas relief under 28 U.S.C. § 2254(d)(1) as set forth in his fifth and sixth constitutional claims.

## V

## CONCLUSION

For these reasons, the Court ADOPTS the conclusions of the Report, as well as its reasoning to the extent that it does not conflict with this Order. The Court also DENIES an evidentiary hearing and certificate of appealability as to Petitioner's habeas claims. The Clerk is directed to send uncertified copies of this Order to all counsel of record.

Dated this 17th day of November, 2026.

John H. Chun
United States District Judge